**E. M. MINIARD, Appellant,**

**v.**

**John L. TURNER et al., Appellees.**

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied Oct. 7, 1955.

James S. Greene, Jr., Harlan, for appellant.

Smith & Shehan, Harlan, for appellees.

SIMS, Judge.

Appellant, E. M. Miniard, filed this suit to quiet title to a 100 acre tract of land in Harlan County and to recover $4,175 damages for alleged wrongful cutting of timber by defendants from the land in controversy. Defendants, John L. Turner and others, denied plaintiff's title and asserted title in themselves to the 31.4 acres actually in dispute, and by way of counterclaim sought $855 damages for timber they alleged plaintiff wrongfully cut therefrom. Defendants further pleaded estoppel against plaintiff.

The trial court adjudged title to the land in dispute to be in defendants but awarded no damages upon their counterclaim. From this judgment plaintiff has appealed. There is no cross-appeal.

Plaintiff is a grandson of William Miniard, Sr., and he married a daughter of Calvin H. and Sarah J. Nolan. Defendants, John L. Turner and G. W. Holbrook, likewise married daughters of the Nolans. It appears that this controversy arose when Mr. and Mrs. Miniard conveyed in 1944 their interest in the Nolan lands to the defendants several years after Mrs. Nolan had died intestate.

Plaintiff claims title under two patents issued to his grandfather, William Miniard, Sr., one covering 100 acres issued in January 1851, the other covering 300 acres issued in October 1852. Defendants claim through a patent for 643 acres issued to William Turner in June 1852, which by mesne conveyances was deeded to Nolan. The lands embraced in the 643 acre Turner patent and in the 300 acre Miniard patent are adjacent and their common boundary line extends for some distance. The Min-

iard 300 acre patent at one point overlaps the Turner 643 acre patent to the extent of approximately 5 acres.

There is no dispute as to the location of the 300 acre patent and the 643 acre patent, but plaintiff contends the Turner patent of 1852 of 643 acres overlaps the Miniard patent of 1851 of 100 acres to the extent of 31.4 acres, the land in dispute. It is the contention of defendants that this 100 acre Miniard patent lies wholly within the 300 acre Miniard patent and that the 643 acre Turner patent does not overlap the 100 acre Miniard patent.

It is evident the first question for determination is the location of the 100 acre Miniard patent. Its correct location depends on whether or not the beginning point in the 100 acre patent is on the Top of a Ridge, or on the Gap of a Ridge. Two surveyors using Miniard's grant No. 19873 for the 100 acre patent got different locations because R. L. Dixon in 1945 read the first call as "Beginning at walnut and black oak on the Top of a Ridge, thence N. 70 E. 40 poles to a lynn black gum;" while L. D. Lambert, surveying for defendants read this call as "Beginning at walnut and black oak on the Gap of a Ridge, thence N. 70 E. 40 poles to a lynn black gum". The patent is written in long hand and the word "Gap" or "Top" appears to be capitalized. Reference to other capital G's in the patent shows a marked dissimilarity, leaving one to believe the capital "G" in reality is a capital "T" poorly written. If the word is "Top", the 100 acre tract is where the surveyor Dixon located it in 1945 when he prepared a map for the Black Star Coal Corporation showing the location of various grants in the community, including this 100 acres. If the word is "Gap", then the 100 acre patent is correctly located by the surveyor Lambert and is not overlapped by the Turner 643 acre patent.

Dixon testified he was shown the walnut and black oak, and that he was able to locate the first and second calls in the 100 acre tract. With this data Dixon located the 100 acre tract as contended for by plaintiff, that is, the Turner 643 acre patent overlapped the Miniard 100 acre tract by 31.4 acres.

Lambert was taken to the starting point contended for by plaintiff. He found a black oak lying there and a hole where a stump had been. He ran the calls as contended by plaintiff and found marked trees all along the line. However, he concluded this was not the proper starting point since there was no "gap" in the ridge. Lambert found a gap in the ridge and proceeded from that point to run the calls in the patent given him. According to Lambert the 100 acre tract is wholly within the 300 acre patent.

The chancellor was of the opinion that the word in the patent was "Top" and plaintiff had accurately located the William Miniard 100 acre patent. We agree with this finding of the chancellor. However, he found plaintiff was estopped to claim the 31.4 acres in dispute.

The estoppel was based upon these facts. In 1944 the Nolan heirs employed R. L. Dixon to locate the boundaries of the land comprising the Nolan estate for the purpose of making a division thereof. Plaintiff and defendants accompanied Dixon on this field trip. During the survey plaintiff pointed out the boundary of the 643 acre tract. At that time plaintiff realized the 643 acre patent overlapped his 300 acre patent because of a partial survey Dixon had made in 1943 of these lands. But plaintiff in 1944 raised no objection to this overlapping because, as he testified, he did not know at that time whether his 100 acre patent was senior to the 643 acre patent. Then in November 1944, plaintiff and wife deeded the latter's inheritance in the Nolan lands to one of the defendants, G. W. Holbrook. That deed provided in part:

"It is not being known exactly what parties of the first part are entitled to (in) the above mentioned inheritance, this deed is made to cover only the first parties' interest in and to the estate of Calvin H. Nolan and Sarah J. Nolan, deceased."

At the time of the 1944 survey plaintiff made no claim to the 31.4 acres which lay within the boundaries of the Nolan estate. Defendants insist the parties to the 1944 deed understood that plaintiff intended to convey all his interest on the Nolan side of the boundary line; while plaintiff argues he intended to convey only his wife's "inheritance" in the Nolan lands and not to pass title to any land he may have owned within the Nolan boundary by virtue of the overlap on his 100 acre senior patent. The chancellor in the course of his opinion said:

"This court is of the opinion that by virtue of the actions of E. M. Miniard in the establishment of the line of the Nolan estate and his later execution of the deed covering his interests in the Nolan estate, (he) intended to sell and convey the land in controversy and the grantees intended to purchase the land in controversy at a fair consideration."

 Plaintiff knew the boundary line between his land and the Nolan tract. From the circumstances, we agree with the chancellor that he intended to convey whatever interest he and his wife had in lands within the Nolan tract. In 1945 plaintiff learned of the seniority of the 100 acre patent and where it was located. If he had thought in 1944 the patent for his 100 acres was senior to the 643 acre patent and that the latter overlapped the 100 acre patent, he should have had a survey made before he executed the deed. The chancellor was correct in holding that plaintiff is estopped from claiming title to the 31.4 acres after he pointed out to defendants and their surveyor the boundary of the 643 acre patent which overlapped his 100 acre patent, including the land in controversy, and then conveyed his and his wife's interest in the 643 acres to defendant, G. W. Holbrook.

We cannot agree with plaintiff's argument that defendants were not prejudiced by his actions. Defendants paid a fair consideration for the interest plaintiff and his wife conveyed them. If plaintiff is not estopped by his actions, then defendants paid him for 31.4 acres of land they did not get.

We feel we should call attention to a deficiency in the judgment of the lower court. It does not definitely describe the land in controversy to which the court gave defendants title. To keep down further controversy and litigation, we suggest that this 31.4 acres be definitely described in the judgment so there can be no doubt about its exact location.

The judgment is affirmed.

HOGG, J., not sitting.